COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Petty, AtLee and Senior Judge Clements


CHARLENE COLE

v.     Record No. 2207-14-3

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 4, 2015

HENRY-MARTINSVILLE
  DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

(Laura E. Frazier, on brief), for appellant.

(Mark B. Holland; Kimble Reynolds, Jr., Guardian *ad litem* for the
minor children; Haymore & Holland, P.C., on brief), for appellee.


Charlene Cole (mother) appeals the orders terminating her parental rights to her minor

children, T.T.C-M. and T.T.S.C-M.  Mother argues that the trial court erred by ruling that there was

clear and convincing evidence (1) to terminate mother's parental rights pursuant to Code

§ 16.1-283(B) and (C)(2) and (2) that mother's prior termination of parental rights was involuntary.

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without

merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.[1]

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cnty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On March 9, 2015, appellant filed a "Motion for Amended Notice of Appeal."  Upon
consideration thereof, we grant that motion.

Mother and Lawrence Martin are the parents to T.T.C-M and T.T.S.C-M.  On January 4, 2013, T.T.C-M. was born.  On January 7, 2013, the Department removed him from his parents' custody because of alleged abuse and neglect.  On May 17, 2013, the Henry County Juvenile and Domestic Relations District Court (the JDR court) found that the child was abused and neglected and entered a child protective order.  It ordered mother to cooperate with services recommended, including mental health treatment.  It also ordered her to take her medicine as prescribed.  Furthermore, the JDR court ordered mother and father to engage in counseling and maintain a stable home.  On November 4, 2013, the Department filed a petition to terminate mother's parental rights to T.T.C-M.

On November 3, 2013, T.T.S.C-M. was born.  On November 4, 2013, the Department removed her from her parents' custody since mother's other child was abused and neglected and removed from her care.  On March 13, 2014, the Department filed a petition to terminate mother's parental rights to T.T.S.C-M.

On April 4, 2014, the JDR court terminated mother's parental rights to her two children.[2] Mother appealed to the circuit court. On August 28, 2014, the circuit court heard evidence and argument in the matter.  The Department presented evidence from Terri Hatcher, who supervised mother's visitations with the children.  She testified that mother had been diagnosed with schizophrenic personality disorder.  During the visitations, mother exhibited "unusual behavior." Her mood would change rapidly, and the Department was forced to end a visitation due to safety concerns.  The Department presented evidence that mother refused to take her medications from January until November 2013, when she was involuntarily committed to a secured psychiatric

---

[2] The JDR court also terminated Martin's parental rights to the children.  He appealed to the circuit court, and the circuit court reversed the JDR court's ruling.

facility. From November until December 2013, mother continued to refuse her medications until a Special Justice ordered the administration of antipsychotic drugs over mother's objections.

In addition, the Department entered into evidence orders from New York showing that mother's parental rights to two older children had been involuntarily terminated due to abuse and neglect. Mother did not object to the admission of these exhibits.

Mother testified that she understood that she had a mental illness. She said that she was taking her medications and would continue to do so.

On September 2, 2014, the circuit court issued a letter opinion. It found that mother "has a mental illness that she has little insight into and is of such severity that there is no reasonable expectation that the mother would be able to undertake responsibility for the care needed by the children in accordance with their ages and stages of development." The trial court also found that mother has had her parental rights terminated with respect to two other children. The trial court held that it was in the best interests of the children to terminate mother's parental rights. On October 15, 2014, the circuit court entered orders terminating mother's parental rights to T.T.C-M. and T.T.S.C-M. pursuant to Code § 16.1-283(B), (C)(2), and (E)(i). This appeal followed.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

*Code § 16.1-283(B) and (C)(2)*

Mother argues that the trial court erred in terminating her parental rights pursuant to Code § 16.1-283(B)[3] and (C)(2)[4] because the Department failed "to present clear and convincing evidence sufficient to satisfy the time requirements of both Code sections." Mother states that T.T.C-M. was placed in foster care in January 2013, and the Department filed a petition to terminate mother's parental rights on November 4, 2013. Then, the Department filed a petition to terminate mother's parental rights to T.T.S.C-M. four months after that child was placed in foster care.

With respect to Code § 16.1-283(B), the statute does not mandate that the Department wait twelve months before it pursues termination of parental rights. Instead, the statute refers to

---

[3] Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

[4] A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

a "reasonable period of time" for the parent to substantially correct or eliminate the conditions that resulted in the abuse or neglect.

On the other hand, Code § 16.1-283(C)(2) states that a parent has been unwilling or unable, within a reasonable period of time, "not to exceed twelve months from the date the child was placed in foster care," to remedy substantially the conditions that led to the child being placed in, and remaining in, foster care. This statute establishes a twelve-month limit for the parent to correct the problems.

> The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care "drift" and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement. "This provision protects the family unit and attendant rights of both parents and child, while assuring resolution of the parent/child relationship without interminable delay." Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 540 (1995). The legislation established a reasonably presumptive time frame of twelve months for parents to receive rehabilitative services to enable them to correct the conditions that led to foster care placement. "The statute clearly contemplates that efforts to resolve the 'conditions' relevant to termination are constrained by time." Id. If the parent fails to substantially remedy those conditions within twelve months the court may act to prevent the child from lingering in foster care.

L.G. v. Amherst Cnty. Dep't of Soc. Servs., 41 Va. App. 51, 56-57, 581 S.E.2d 886, 889 (2003). "The time limit does not, however, temporally restrict the trial court's consideration to events that occurred between the parent and child only during that discrete twelve-month time period to the exclusion of what may have occurred before and after those dates." Id. at 57, 581 S.E.2d at 889 (citing Roanoke City Dep't of Soc. Servs. v. Heide, 35 Va. App. 328, 337, 544 S.E.2d 890, 894 (2001)).

Contrary to mother's arguments, she had a reasonable period of time to substantially correct the conditions which resulted in the children being placed in foster care. For T.T.C-M., mother did not seek medical treatment for her mental illness until she was involuntarily

committed and forced to take her medications by a Special Justice. Mother was involuntarily committed in November 2013, and T.T.C-M. had been in foster care since January 2013. For T.T.S.C-M., mother had not resolved the conditions when the child was born in November.

Although mother testified at the circuit court hearing that she was taking her medications, the circuit court found that mother lacked insight into her mental illness and was not capable of taking care of the children. She had not substantially remedied the problems, even though by the time of the circuit court hearing, T.T.C-M. had been in foster care for more than eighteen months.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the record, the circuit court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2).

*Code § 16.1-283(E)(i)*

Mother argues that the trial court erred by terminating her parental rights pursuant to Code § 16.1-283(E)(i) because she contends the evidence did not prove that her parental rights were involuntarily terminated. When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds. See Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not

consider whether the trial court erred in terminating mother's parental rights pursuant to Code § 16.1-283(E)(i).

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.